Salix State Bank, Petitioner *v.* Commonwealth of Pennsylvania, Department of Banking, Respondent.

Argued February 28, 1978, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, Rogers, Blatt and DiSalle.

*Edward F. Peduzzi,* with him *Myers, Taylor & Peduzzi,* for petitioner.

*John E. Nanorta,* Assistant Attorney General, with him *Melvin R. Shuster,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

Opinion by President Judge Bowman, June 16, 1978:

Respondent, Department of Banking (Department), has filed preliminary objections to a petition

for review in which petitioner, Salix State Bank (Salix), seeks an order of this Court (1) reversing a Department "order," and (2) enjoining the Department from requiring Salix to rebate to borrowers alleged unlawful interest charges.

As filed, the petition for review invoked this Court's original jurisdiction pursuant to Section 401, Appellate Court Jurisdiction Act of 1970 (ACJA), Act of July 31, 1970, P.L. 673, *as amended*, 17 P.S. §211.401, and our appellate jurisdiction pursuant to Section 403, ACJA, 17 P.S. §211.403. To the extent that the petition for review asserted our appellate jurisdiction with respect to appeals from state administrative adjudications, the Department filed a motion to quash because it was untimely taken. The motion was granted and the matter proceeded as one within our original jurisdiction in the nature of a complaint in equity questioning a governmental determination. *See* Pa. R.A.P. 1512(c), 1513.[1] Thereafter, the Department filed its preliminary objections now before us, which raise three issues: (1) immunity from suit; (2) failure to plead a justiciable issue as the Department to date has not sought judicial enforcement of its ."order"; and (3) in the nature of a demurrer for failure to state a cause of action.

The Department's assertion of immunity from suit is without merit. Though it has been held that this

---

[1] The governmental determination in question is a letter issued over the signature of a Deputy Secretary of Banking finding that certain insurance premium financing contracts entered into by Salix constitute direct rather than third party loans, thereby subject to lesser lawful maximum interest rates than charged by Salix, and directing Salix to rebate the excessive interest charges. As the issue has not been raised, we do not pass upon the question of whether this letter, particularly in the context of its wording, constitutes a governmental determination within the meaning of Chapter 15, Pa. R.A.P., and the jurisdictional requirements of Section 401, ACJA.

immunity extends to actions in equity, *Ross v. Keitt,* 10 Pa. Commonwealth Ct. 375, 308 A.2d 906 (1973), *aff'd,* 466 Pa. 576, 353 A.2d 841 (1976), this has been done in the context of prospective civil damages. *See Schroeck v. Pennsylvania State Police,* 26 Pa. Commonwealth Ct. 41, 362 A.2d 486 (1976).

The distinction is clear between suits against the Commonwealth which are within the rule of its immunity and suits to restrain officers of the Commonwealth from enforcing the provisions of a statute claimed to be unconstitutional. Suits which seek to compel *affirmative action on the part of state officials* or *to obtain money damages or to recover property from the Commonwealth* are within the rule of immunity; suits which simply seek *to restrain state officials* from performing affirmative acts are not within the rule of immunity. (Emphasis in original.)

*Philadelphia Life Insurance Co. v. Commonwealth,* 410 Pa. 571, 576, 190 A.2d 111, 114 (1963).

In view of this directive, we are of the opinion that sovereign immunity cannot operate as a bar to the asserted cause of action. *See Concerned Taxpayers of Allegheny County v. Commonwealth,* 33 Pa. Commonwealth Ct. 518, 382 A.2d 490 (1978).

Equally without merit is the Department's assertion that Salix cannot seek judicial review of the governmental action taken against it but must await further proceedings by the Department seeking judicial enforcement of the "order" Salix here complains of. The shortfall of this contention lies in the question of whether the governmental action taken constitutes an enforceable order within the meaning of Section 502, Department of Banking Code, Act of May 15, 1933, P.L. 565, *as amended,* 71 P.S. §733-502. It is clearly not an adjudication subject to Section 403,

ACJA, judicial review as it was issued without notice or hearing being afforded prior to its issuance and falls far short of the mandated requirements of an adjudication as to findings of fact and conclusions of law. Assuming it to meet such requirements, we are aware of no decisional law which requires one to await enforcement by judicial proceedings of an issued order, which, by its very nature, does not constitute an adjudication subject to Section 403, ACJA, judicial review.

Finally, taking as true the well-pleaded relevant factual averments of Salix' petition for review, we cannot say that it does not state a cause of action.

As the petition for review informs us, the disputed interest charges are incorporated in contracts consummated by Salix in the course of its practice of financing insurance premiums when the insured for various reasons desired to finance rather than fully pay the premiums.

In such situations, the insurance agent or broker and the insured would execute an Insurance Premium Finance Agreement (IPFA) setting forth the terms and conditions of the coverage, and at the same time requesting the bank to advance the amount of premium financed on the insurance and pay to the agent the unpaid premium balance.

Salix, upon receipt of the IPFA from the agent, would ascertain that the policy or policies listed therein were, in fact, issued and in effect. Salix would then purchase the IPFA for the balance of the premium due thereon, charging the interest and finance charges set forth therein.

By the express terms of the IPFA, it would not become effective unless and until Salix "accepted" by making the requested advance.

It is the Department's contention that this practice constituted a direct loan from Salix to the in-

sured, and that the interest charges attached thereto exceeded the limits set forth in Section 309 of the Banking Code of 1965 (Code), Act of November 30, 1965, P.L. 847, *as amended*, 7 P.S. §309, which establishes a maximum interest rate of six dollars ($6.00) per annum for installment loans. The demurrer goes on to argue that even assuming *arguendo* that the IPFAs are third party loans, not subject to Section 309, they remain, on their face, usurious and in violation of such laws as the Consumer Discount Company Act, Act of April 8, 1937, P.L. 262, *as amended*, 7 P.S. §6201 et seq., and the Act of January 30, 1974, P.L. 13, 41 P.S. §101 et seq. (defining maximum lawful interest rates).

From the skeletal outline of facts set forth above, we cannot say unequivocally that the IPFA is a direct loan. Nor for that matter can we say that it is a third party loan. Demurrers are to be granted only in the clearest of cases, and from the state of the record now before us, the status of the IPFA, and the extent of the parties' obligations, is far from clear.

It is unclear, for instance, whether the IPFA operates as a delegation and assignment by the insured to Salix, whether there is incorporated an assignment to Salix by the insurer of a preexisting right to payment under a valid insurance contract, or whether there is a completed novation resulting in a direct bilateral contract between Salix and the insured.

Also undefined is the aleatory nature of the obligor/insured's duties under the insurance contract; the role of the broker/agent in initiating financing arrangements, executing the IPFA, forwarding the document to Salix, and accepting payment; and, finally, what warranties, if any, adhere to the original insurance contract and relate to the prospects of future financing.

As resolution of these uncertainties is necessary, the demurrer must be overruled and preliminary objections dismissed.

O<small>RDER</small>

Now, June 16, 1978, preliminary objections of the Department of Banking to the petition for review are hereby dismissed and respondent is directed to file an answer within thirty (30) days of this Order.